UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| PETER KEPPARD, JR., TRINIDAD AVILA, ALONSO ROBLES, GUILLERMO TREVINO, HUMBERTO CASTILLO, HECTOR A VALLEJO, and HECTOR VALLEJO, On Behalf of Themselves and All Others Similarly Situated, | § § § § § § § § | |
| PLAINTIFFS | § § | CAUSE NO.: 5:15-cv-00625-OLG |
| v. | § § | |
| C. C. FORBES, LLC, FORBES ENERGY SERVICES, LTD, and FORBES ENERGY SERVICES, LLC | § § § § § | JURY TRIAL DEMANDED |
| DEFENDANTS | § | |

## DEFENDANTS' BRIEF OPPOSING PLAINTIFFS' OPPOSED MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE TO PUTATIVE CLASS MEMBERS

COME NOW DEFENDANTS C.C. Forbes, LLC, Forbes Energy Services, Ltd and Forbes Energy Services, LLC and file this Brief in Opposition to Plaintiffs' Opposed Motion for Conditional Certification and for Notice to Putative Class Members (hereinafter "Motion") (Dkt. 30)

Defendants have contemporaneously filed separate objections to Plaintiffs' evidence and regarding Plaintiffs' request for information and their proposed notices.

### I.  SUMMARY AND BACKGROUND

1. Plaintiffs sued three entities: Defendant Forbes Energy Services, Ltd., is a holding company and has no employees. Defendant Forbes Energy Services, LLC employs

management/administrative staff and is not Plaintiffs' employer. Plaintiffs were/are employed in the Coiled Tubing Division of Defendant C.C. Forbes, LLC[1]. Exh. 1 Clifton ¶ 3-5.

2. As the facts below establish, Defendant C.C. Forbes has distinct business units with each providing different services. The Coiled Tubing Division and Rig Division have separate locations, use different equipment, have separate management, and each division hires its own employees to perform jobs with different skills, different pay, different schedules and different supervision. The divisions do not hire individuals in the general category of "manual laborer."

3. Plaintiffs seek conditional certification of the following proposed class:

> **All current and former hourly paid manual laborers employed by Defendants between July 29, 2012 and the date notice is issued. Motion (P.1).**

4. Plaintiffs' request for conditional certification should be denied: (1) they fail to show they are similarly situated to the proposed class, in terms of pay, job classification, and with regard to those who have settled their claims; (2) they fail to show putative class members in other divisions/locations want to opt in;(3) they fail to show a central decision, policy or plan regarding the putative class; and (4) they fail to show joint enterprise as broadly as may be claimed. Alternatively, if conditional certification is granted, Defendants request that the putative class be limited to pump operator and helpers employed in the Coiled Tubing Division of C.C. Forbes who were paid daily bonus and did not settled their claims.

## II.   FACTS

5. Plaintiffs make numerous allegations regarding the alleged relationships between Defendants and even the relationships between the Defendants and entities that have not even been sued. Motion P.3-7. Many of the allegations are incorrect, taken out of context, based on out dated information, and/or relate to entities that have not been sued. Motion P.3-7; *See e.g.*

---

[1] This Brief is supported by Declarations of Roberto Gallegos (Exh. 1); Ray Stoebner (Exh. 2 ) and Katherine Clifton (Exh. 3).

Ex. 12 (Dkt. 30-14)(regarding non-defendant Tx. Energy Services LLC, 2013); Ex. 13 (Dkt. 30-15) (regarding non-defendant TX Energy Services, LLC, 2007); and Ex. 14, (Dkt. 30-16) (regarding non-defendant Superior Tubing Testers, LLC, 2011). While Defendants dispute many of the allegations, Defendants are limiting their response to those allegations which bear directly on the issue of whether conditional certification should be granted.

6.     As stated above, Defendant C.C. Forbes has distinct business divisions. There are substantial differences between the Coiled Tubing Division, where Plaintiffs were employed, and the Rig Division, where Plaintiffs did not work. Employees working for the Coiled Tubing Division are not similarly situated to employees working for the Rig Division. The differences include differences in locations, equipment, services, management, pay, hours and schedules, and job positions. Exh. 1, ¶3–17; Exh. 2, ¶3–18.

   a.  **Different Locations:** The Coiled Tubing Division has one location in Pleasanton, Texas.  Exh. 1, ¶4 The Rig Division has rig yards in West, East, and South Texas and Pennsylvania. Exh. 2, ¶4    The divisions do not share yards. Exh. 1, ¶3

   b. **Different Equipment/Services:** The Coiled Tubing Division uses coiled tubing units to service high pressured wells.  A coiled tubing unit has one continuous string of pipe that is up to 23,500 feet in length.  The coil tubing unit operator operates the coil tubing unit, with a pump operator and coil tubing helpers. The unit does not have a derrick and does not use individual pipe joints.  Exh. 2, ¶8  It is very different from the equipment used by the Rig Division. Exh. 1-A (Photo of coiled tubing unit); Exh. 2-A (photo of workover rig)

   The Rig Division services lower pressured wells, using work over rigs that have 350-600 HP, with derricks that sore 106 feet high and are rated to hold 250,000 pounds.  The work over rig is used to connect/disconnect separate joints of pipe that are 30-31 feet in length. A driller

operates the work over rig. A derrick man works in the air racking the tubing in the board. Floor hands operate tubing tongs, elevators and slips; using elevators to latch onto the individual joints of pipe; heavy tongs to connect/disconnect the separate joints of pipe and slips to keep the pipe from dropping into the well bore. The Rig Division also has specialized equipment: reverse units, swab units, and power swivels and employees to operate this equipment. Exh. 2, ¶7-9  The Rig Division does not have coil tubing units nor employees to operate such units. Exh. 2, ¶7-10

The services provided by the two divisions are sufficiently different that they do not even work the same well jobs. Exh. 1, ¶6; Exh. 2, ¶6  Plaintiffs were not working side by side with the Rig Division crews.

   c. **Different Management**: The Coiled Tubing Division manager manages the Coiled Tubing rig yard. Its manager and supervisors hire, fire, and discipline employees, set their work hours and schedules, and make the day to day decisions relating to the coiled tubing rig yard, employees and equipment.  Exh. 1, ¶4 The Coiled Tubing Division management does not manage any aspect of the Rig Division nor manage or supervise Rig Division employees. Exh. 1, ¶5

The Rig Division Managers manage their assigned rig yards, including hiring, firing, and discipline of employees, setting their work hours and schedules, and making the day to day decisions relating to their rig yard, employees and equipment. Exh. 2, ¶11 The Rig Division Managers do not manage any aspect of the Coiled Tubing Rig Division nor manage or supervise Coiled Tubing Division employees. Exh. 2, ¶12

   d. **Different Pay/ Bonuses:** The pay of employees vary by whether the employee works in the Coil Tubing Division or Rig Division, the position held by the employee, and even the rig yard location where the employee works. Exh. 1, ¶12; Exh. 2, ¶14  The Coil Tubing Division

pays some, but not all, employees a daily bonus. Exh. 1, ¶12  Many of the employees in the Rig Division do not receive a daily bonus. Exh. 2, ¶14

    e. **Man Camps:** The Coiled Tubing Division provides some employees with lodging at man camps, but other employees are not provided with such lodging. Exh. 1, ¶14  The Rig Division does not provide lodging at man camps to any of its employees. Exh. 2, ¶16  Contrary to Plaintiffs' conclusory allegation, this lodging is not part of any compensation plan.

    f. **No Uniform Hours or Schedules:**  The schedules and hours of the Coiled Tubing Division employees are based on the Coiled Tubing business needs as determined by its management. Exh. 1, ¶10-11  The schedule and hours of the Rig Division employees are based on the Rig Division's business need of the location for which they work as determined by each yards' management. Exh. 2, ¶11-12

    g. **Job Duties Are Different**:  All Plaintiffs were employed in the Coiled Tubing Division: one was a Coil Tubing Unit Operator (Hector A Vallejo); four were Pump Operators (Keppard, Robles, Hector Vallejo, and Trevino), two were Helpers (Trinidad Avila and Castillo). Exh. 1, ¶17  A brief summary of their job duties are:

> Coiled Tubing Unit Operator: rigs the coil tubing unit up/down and runs the coiled tubing unit; runs a continuous pipe in the well bore.
>
> Coiled Tubing Pump Operator: operates the fluid pumps and nitrogen pumps for the coil tubing unit and assist with taking care of its fuel and equipment.
>
> Coiled Tubing Helpers: helps with the rig-up and rig-down of the coiled tubing unit; takes care of fuel, equipment, and tool trailer. Exh. 1, ¶16

Other employees in the Coiled Tubing Division and the employees in the Rig Division have very different jobs:

> Rig Division Driller: operates the work over rig, controls the work over rig carrier and derrick that pulls tubing in and out of the well bore; operates the rig and pump, is responsible to ensure rig maintenance and drives the rig.

Rig Division Derrick: Responsible for all work performed from the rod basket (high in the air on the derrick) and tubing board (transferring rods and tubing from the vertical racks to the elevators) on a work over rig; operates the elevators for the work over rig; assists in manually lifting the tubing from the rack onto the floor or vice versa; assists in the rigging up/down of the work over rig well service unit by lifting, operating rig up and rig down guy-wires, hydraulic jacks, pads/boards; works the floor; operates the work over rig when necessary.

Rig Division Floor Hands: Inspects Rig Division's equipment and assists the work over rig driller during operations which require running tally (counting pipe) and using work over rig equipment (tongs, slips, elevators, winch line) during drilling operations; pulling and running pipe into and out of well and make and break connections; running casing into the well; monitors and replenishes fuel; maintenance of work over rig; installs pit liner in pit.

Rig Division Specialized Unit Operators: Some rig yards employ individuals to operate specialized equipment, including: Reverse unit operator: operates a reverse unit, Swab Unit Operator: operates a swab unit, Swab Helper: Assist the swab unit operator and Power Swivel Operator: Operates a power swivel.

Coiled Tubing Division Technician: Works on all computer issues whether in the yard on the units and works on electrical on the units.

Coiled Tubing Division Mechanic: Maintenance/repair work on Coiled Tubing Equipment

Rig Division Mechanic: Maintenance/repair work on Rig Division equipment.

Rig Division Driver: Transports the heavy equipment to/from location; help as needed.

Rig Division Welder: Responsible for permanently joining metal parts using high heat application to form a permanent bond; may specialize in different processes

Clerk: Performs administrative, processes paper work; office job.

7. Plaintiffs support their motion with three Declarations (Dkts. #30-1, 30-2, 30-3). Plaintiff Avila claims he is a pump operator, operating the pump and assisting with rig-up and rig-down. (Dkt. #30-4, ¶1-2) He claims he works with other employees who assist in the pump down. (Dkt. 30-4, ¶5) Avila is the only declarant to claim he was provided with a bed at a "man camp."

8.     Plaintiff Keppard states he was a pump operator, running fuel and operating pump machinery. (Dkt. 30-1, ¶1-2) He claims he "understands" Forbes Energy provides "man camps." (Dkt. 30-1, ¶6) He claims he worked alongside other Forbes' employees performing manual labor, such as water transfer and operate different pumps. (Dkt. 30-1, ¶5) He provides no other information regarding this alleged work.

9.     Plaintiff Trevino does not provide his job title. He claims he drove and operated pumps. (Dkt. 30-3, ¶2) He states he worked alongside other employees performing coil tubing. (Dkt. 30-3, ¶6) He claims he was told about the man camps. (Dkt. 30-3, ¶8)

10.    All three claim that they were paid a bonus. They also claim they talked to "fellow employees" who also received a "daily bonus." These individuals are not otherwise identified. (See Dkts. 30-1, ¶6; 30-3, ¶7; 30-4, ¶6)

11.    None of the declarants provide any evidence regarding where they worked, when they worked, or even how many hours a week they worked. They all claim their employer was C.C. Forbes and "Forbes Energy" without any factual basis for the claim. (See ¶1 of Dkts. 30-1; 30-3; 30-4) Two paychecks are included as evidence, both issued by C.C. Forbes. (Dkts. 30-2; 30-5)

12.    Plaintiffs do not identify any other person as interested in joining the suit but make vague allegations that they believe others would join. (Dkts. 30-1, ¶8; 30-3, ¶9; 30-4, ¶8)

13.    Plaintiffs' request for conditional certification should be denied: (1) they fail to show they are similarly situated to the proposed class, in terms of pay, job classification, and with regard to those who have settled their claims; (2) they fail to show putative class members in other divisions/locations want to opt in;(3) they fail to show a central decision, policy or plan regarding the putative class; and (4) they fail to show joint enterprise as broadly as may be claimed. Alternatively, if conditional certification is granted, Defendants request that the

putative class be limited to pump operator and helpers employed in the Coiled Tubing Division who were paid daily bonus and have not settled their claims for the relevant time period.

### III. ARGUMENT AND CITATION OF AUTHORITY

The statutory standard for bringing a collective action under the FLSA requires that the claimants be "similarly situated." Plaintiffs must show substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination. *Mooney*, 54 F.3d at 1214 n. 8. The class member representatives must be similarly situated in terms of job requirements and payment provisions. *Ryan v. *644 Staff Care, Inc.*, 497 F.Supp.2d 820, 824-25 (N.D. Tex. 2007). A plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join in the lawsuit. *Ali v. Sugarland Petroleum,* 2009 U.S. Dist. LEXIS 118829, *6-7 (S.D. Tex. Dec. 22, 2009). The court must decide whether to conditionally certify "based only on the pleadings and any affidavits which have been submitted." *England v. New Century Fin. Cop.* 370 F.Supp.2d 504, 508 (M.D.La. 2005). Though Plaintiffs are held to a "lenient standard," the decision to create an opt-in class under § 216(b) remains soundly within the discretion of the district court. *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). *Valcho v. Dallas County Hospital District*, 574 F.Supp.2d 618, 621-22 (N.D. Tex. 2007).

Generally, a plaintiff must show that: there is a reasonable basis for crediting the assertion that aggrieved individuals exist; they are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and they want to opt-in to the lawsuit. *Morales v. Thang Hung*, No. 2009 U.S. Dist. LEXIS 71765, at *6-7 (S.D. Tex. Aug. 14, 2009). Unsupported assertions of widespread violations are not sufficient to meet Plaintiffs' burden.

*Hall v. Burk*, No. 3:01CV2487H, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002) citing *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983).

A. **Conditional Certification Should Be Denied Because Plaintiffs Have Not Shown That They Are Similarly Situated to the Proposed Class**

Plaintiffs appear to recognize that conditional certification of class requires that the Plaintiffs be similarly situated to the putative class, in terms of "job titles, duties and compensation." Motion P.1, ¶3 (Dkt. 30)  Plaintiffs however fail to show that they are similarly situated to the putative class. Plaintiff has broadly and vaguely defined the putative class as:

**All current and former hourly paid manual laborers employed by Defendants between July 29, 2012 and the date notice is issued.  Motion (P.1, Dkt. 30).**

(1) <u>**Not Similarly Situated Regarding Pay:**</u> Plaintiffs claim that they are similarly situated to the putative class based on claims that Defendants paid all putative class members a "daily bonus" and provided all of them with lodging at man camps but failed to include these amounts as part of the regular rate for calculating overtime wages. Motion P.2, ¶1, P. 8, ¶1 (Dkt 30).  Plaintiffs provides no evidence to support such broad allegations.  All putative class members are not provided with lodging at man camps nor bonuses.

a. <u>No Man Camps in Rig Division / Few in Coiled Tubing Division:</u> The Rig Division does NOT provide lodging at man camps to any of its employees.  Exh. 2, ¶16  The Coiled Tubing Division provides such lodging to only some of its employees.  Exh. 1, ¶14  Further, even Plaintiffs own evidence shows that only one of the three declarants stayed at a man camp. *See* Exh. Avila at 7; Keppard 7 (claims he understands that man camps were provided "at some point" but does not claim to have stayed at one); Trevino 8 (asserts man camps are provided and he was told about them when he was first hired).

Plaintiffs are not similarly situated to each other and not similarly situated to the proposed class.

      b.    <u>Daily Bonus Only Applies to "Fellow Employees"</u>: Plaintiffs only evidence of who received a daily bonus are the three declarants' statement that they talked to "fellow employees." The declarants do not identify any of these "fellow employees" or the positions they held. Facts, P.7, ¶10 Only through speculation can anyone guess what the declarants meant by "fellow employees." But even if speculation is allowed "fellow employees" should not be construed so broadly as to include Rig Division employees who worked in different yards across Texas and Pennsylvania and were not even working at the same well sites at Plaintiffs. Not all employees of the Coiled Tubing Division received daily bonuses and many employees of the Rig Division did not receive daily bonuses. Facts, P.4, ¶6.d Plaintiffs are not similarly situated to employees who did not receive a daily bonus.

**(2)**    <u>**Not Similarly Situated Regarding Job Classifications**</u>: Plaintiffs seek a putative class of "manual laborers." Defendants have no job classification of "manual laborer" and none of the Plaintiffs held such a position. Contrary to Plaintiffs claims the duties of Plaintiffs and putative class members do not "differ slightly." Motion P.7, ¶7 All the Plaintiffs worked in the Coiled Tubing Division of C.C. Forbes with specific positions and duties:

      (a)    <u>All Plaintiffs Not Similarly Situated to Each Other:</u> The four Plaintiffs who were <u>Pump Operators</u> spent their time running fuel and operating the pump. These duties are different than the duties of a coiled tubing unit operator or helper in the coil tubing unit. Pump operators do not operate the coil tubing unit nor help with the rigging up/down nor perform the other duties of these other positions. Facts P.5, ¶6.g They are not similarly situated.