UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

PETER KEPPARD JR., TRINIDAD      *
AVILA, ALONSO ROBLES,            *
GUILLERMO TREVINO, HUMBERTO      *
CASTILLO, HECTOR A. VALLEJO,     *
HECTOR VALLEJO, MIGUEL           *    CIVIL NO. SA-15-CA-00625-OLG
BARRIENTOS, ABDEL PEREZ          *
MARTI, JOSE DIAZ, ADRIEL         *
CANTU, ALFREDO LA ROSA, ANGEL    *
TORRES, JOSE R. SAN MIGUEL       *
JR., and ANTONIO VALDEZ,         *
                                 *
         Plaintiffs,             *
                                 *
v.                               *
                                 *
C.C. FORBES, LLC,  FORBES        *
ENERGY SERVICES, LTD, and        *
FORBES ENERGY SERVICES, LLC,     *
                                 *
         Defendants.             *

**ORDER and MEMORANDUM AND RECOMMENDATION**

Before the Court are "plaintiffs", Peter Keppard Jr., Trinidad Avila, Alonso Robles, Guillermo Trevino, Humberto Castillo, Hector A. Vallejo, and Hector Vallejo's Opposed Motion for Conditional Certification and for Notice to Putative Class Members (docket nos. 30 and 40). Defendants, C.C. Forbes LLC, Forbes Energy Servs. Ltd. and Forbes Energy Servs. LLC, (collectively "Forbes Energy") have filed a brief opposing plaintiffs' motion (docket no. 35), and further, have filed the following motions: defendants' Unopposed Motion for Leave to File Response in Excess of Page Limit (docket no. 34)[1]; and

---

[1] Although defendants' sought leave to file their response in excess of the page limits, plaintiffs did not seek leave despite filing a motion in excess

Defendants' Motion to Strike, and Objections to Plaintiffs' Request for Information, Proposed Notices and Proposed Procedures Regarding Plaintiffs' Motion for Conditional Certification (docket no. 36), to which plaintiffs' have responded (docket no. 41).  On November 27, 2015, plaintiffs' filed a motion to replace exhibit no. 24 (docket no. 38), as well as an unopposed motion for leave to exceed page limitations (docket no. 39).

Upon consideration of the motions, responses, and applicable law, defendants' Unopposed Motion for Leave to File a Response in Excess of Page Limit is **GRANTED** (docket no. 34); plaintiffs' Motion to Replace Docket No. 30-24 is **GRANTED** (docket no. 38); plaintiffs' Unopposed Motion for Leave to Exceed Page Limitation is **GRANTED** (docket no. 39); and defendants' Motion to Strike, and Objections to Plaintiffs' Request for Information, Proposed Notices and Proposed Procedures Regarding Plaintiffs' Motion for Conditional Certification is **GRANTED IN PART, DENIED IN PART AS MOOT, AND DENIED IN PART** in accordance with this Order (docket no. 36). Additionally, it is the recommendation of this court that plaintiffs' Opposed Motion for Conditional Certification and for Notice to Putative Class Members be **GRANTED as modified** (docket no. 30).

---

of twenty pages.  The parties are advised that henceforth, they will be required to strictly adhere to the **LOCAL COURT RULES**.

**BACKGROUND**

The defendant, Forbes Energy, is an independent oilfield services contractor that operates in the Eagle Ford shale formation in South Texas, as well as locations in Mississippi and Pennsylvania. (Docket no. 30, exh. 4). It provides a range of well site services to oil and natural gas drilling and producing companies. (Id.). Plaintiffs are former and current employees of Forbes Energy, who were employed by defendants as hourly manual laborers from July 29, 2012, and who worked in excess of forty hours a week. (Id., exhs. 1-3).

Plaintiffs maintain that they worked in one of Forbes Energy's nine Coil Crews, each of which consists of a day and night shift, with approximately ten hourly laborers per crew. Plaintiffs allege they operated coil tubing units, pump trucks, nitrogen units, tool trailers, and cranes, and routinely worked in excess of forty hours a work week. Plaintiffs state they were paid an hourly rate plus a daily bonus but were not paid one-and-one-half times their "regular rate" for all of the hours worked. Additionally, plaintiffs allege that Forbes Energy provided plaintiffs with living quarters but incorrectly calculated plaintiffs' "regular rate" by failing to include the reasonable cost or fair value of the lodging in the "regular rate" calculations.

Plaintiffs bring this action pursuant to the Fair Labor Standards Act ("FLSA") seeking to recover lost wages and other damages on behalf of themselves and other similarly situated hourly employees. Additionally, plaintiff Keppard alleges he was retaliated against in violation of the FLSA when he was terminated shortly after complaining about defendants' failure to pay overtime wages.

## APPLICABLE LAW

In determining whether to certify a collective action pursuant to 29 U.S.C. § 216(b), the Court employs the two stage test set forth in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91 (2003); *see also Vallejo v. Northwest I.S.D.*, No. SA-12-CV-270-XR, 2012 WL 5183581, at *1 (W.D. Tex. Oct. 17, 2012)(explaining that while the Fifth Circuit has not adopted a specific test for determining whether to certify a collective action under 29 U.S.C. § 216(b), the prevailing analysis used by federal courts is the *Lusardi* two-stage test); *Vargas v. HEB Grocery Co., LP*, No. SA-12-CV-116-XR, 2012 WL 4098996, at *3 (W.D. Tex. Sept. 17, 2012). In *Mooney*, the Fifth Circuit explained the *Lusardi* analysis as follows:

The first determination is made at the so-called 'notice stage.' At the notice stage, the district court makes a decision- usually based only on the pleadings and any

4

affidavits which have been submitted whether notice of the action should be given to potential class members.

Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt in.' The action proceeds as a representative action throughout discovery.

The second determination is typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives-i.e. the original plaintiffs- proceed to trial on their individual claims.

*Mooney*, 54 F.3d at 1214.

The potential class must be "similarly situated" to the named plaintiff(s) in order for the Court to find that conditional certification is appropriate. To make this determination, the Court looks only to the pleadings and affidavits. *Id.* "The 'decision to create an opt-in class under §126(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the District Court.'" *Rousseau v. Frederick's Bistro, LTD*, No. SA-09-CV-651-XR, 2010 WL 1425599, at *2 (W.D. Tex. April 7, 2010)(*quoting Wajcman v. Hartman & Tyner, Inc.*, No. 07-61472-CIV, 2008 WL 203579, at *1

(S.D. Fla. Jan. 23, 2008)). Further, the standard for determining whether the potential class of plaintiffs is "similarly situated" is a lenient one and, generally, the request for conditional certification is granted. **Mooney**, 54 F.3d at 1214; **see also Vallejo**, 2012 WL 5183581, at *1. As the Fifth Circuit noted in **Mooney**, "courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." **Mooney**, 54 F.3d at 1214, n.8 (quoting **Sperling v. Hoffman-La Roche, Inc.**, 118 F.R.D. 392, 407 (D.N.J. 1988)).

## DISCUSSION

Plaintiffs have filed a motion for conditional certification and for Notice to Putative Class Members, maintaining that defendants are a joint enterprise and that the putative class members are all similarly situated. In support of their motions, plaintiffs submit the following evidence: exh. 1- declaration of Peter Keppard, Jr.; exh. 1-A- Keppard's Pay Stub; exh. 2- declaration of Guillermo Trevino; exh. 3- declaration of Trinidad Avila; exh. 3-A- direct deposit earning statement for Trinidad Avila; exh. 4- Forbes Energy Services' company information; exh. 5- map showing CC Forbes' Mississippi Operations; exh. 6- map showing CC Forbes' Pennsylvania's Operations; exh. 7- website for Forbes Energy Services; exh. 8-

Form S-4 Amendment showing organizational structure for Forbes Energy Services Ltd.; exh. 9- Forbes Energy Servs. Ltd. Form 10-Q (quarterly report); exh. 10-Texas Franchise Tax Public Information Report for Forbes Energy Services, LLC; exh. 11- Texas Franchise Tax Public Information Report for C.C. Forbes, LLC; exh. 12- Business Organizations Inquiry for Tx. Energy Services, LLC; exh. 13- Business Organizations Inquiry for Tx. Energy Services, LLC; exh. 14- Business Organizations Inquiry for Superior Tubing Testers, LLC; exh. 15- documents pertaining to corporation; exh. 16- website for Superior Tubing Testers, LLC; exh. 17- Forbes Energy Services website; exh. 18- Forbes Energy application for employment; exh. 19- Forbes Energy driver's application for employment; exh. 20- photos depicting Forbes Energy uniforms; exh. 21- photo depicting Forbes Energy Services' truck; exh. 22- Notice to Potential Plaintiffs; exh. 23- proposed email to putative class member; exh. 24- proposed reminder notice; and exh. 25- proposed Telephone Script.

Defendants oppose the motion and further, have filed a motion to strike portions of plaintiffs' evidence. Additionally, defendants object to plaintiffs' discovery requests and to plaintiffs' proposed notices and procedures. The court initially addresses defendants' objections to the evidence, and then addresses plaintiffs' motion for conditional certification. Should the undersigned determine that a

recommendation for conditional certification be warranted, the undersigned will then address defendants' objections to plaintiffs' discovery requests and proposed notices and procedures.

## I.   Defendants' Motion to Strike & Objections to Evidence

Defendants object to portions of plaintiffs' evidence filed in support of their motion, and request the Court strike this evidence.  In particular, defendants object to exh. 21 and exhs. 1-3.

### A.  Exhibit 21

Defendants initially object to exh. 21, which is a photograph of a truck, allegedly belonging to Forbes.  Citing Federal Rule of Evidence 901, defendants contend that the photo is not authenticated because there is no evidence of who took the photo or where it was taken.

Rule 901, pertaining to authentication and identification of evidence, generally requires that the proponent "produce evidence sufficient to support a finding that the item is what the proponent claims it is."  **FED.R.EVID. 901**.  Here, although it is unknown who took the photo, it appears relatively certain that the photo is what the proponent claims it to be.  The vehicle displays the same logo found in exhibit 20, to which defendants do not object.  (Docket no. 30, exh. 20).  Also exhibits 4, 17, 18 and 19, each contain the exact same logo for

Forbes Energy Services depicted in exhibit 21 and further, depict a vehicle with the same colors and a very similar logo, albeit with the name of a different defendant (C.C. Forbes). (Docket no. 30, exhs. 4, 17, 18 and 19). Defendants do not object to these exhibits and it appears relatively certain that if exhibits 4, 17, 18, 19 and 20 accurately depict Forbes' website, job applications, and uniforms as the proponent claims, then exhibit 21 likewise accurately depicts Forbes' truck.

Defendants' objection to exh. 21 is **overruled.**

**B. Exhibits 1-3**

Defendants also object to exhs. 1, 2, and 3, arguing that these exhibits contain statements that are conclusory in nature, lack the proper foundation and further, are hearsay. Defendants initially object to statements, contained in exhs. 1, 2, 3, that refer to plaintiffs being employed by Forbes Energy. Defendants argue that plaintiffs fail to identify any specific "Forbes Energy" entity, and fail to provide a basis for belief that any alleged actions were taken either by Forbes Energy Services, LTD or Forbes Energy Services, L.L.C.

In his declaration, Keppard states he was employed as a pump operator for C.C. Forbes and Forbes Energy. (Docket no. 30, exh. 1). Plaintiffs Guillermo Trevino and Trinidad Avila make similar statements. (Id., exhs. 2 and 3). Further, plaintiffs submit evidence regarding Forbes Energy Services'

organizational structure that lists C.C. Forbes as a subsidiary. (Docket no. 30, exhs. 8 and 9).  Additionally, plaintiffs submit evidence of several documents and websites under the Forbes Energy Services logo that depict a vehicle with the C.C. Forbes name and logo.  (Docket nos. 4, 17, 18 and 19).  While plaintiffs do not distinguish between Forbes Energy Services, LTD and Forbes Energy Services, L.L.C., the court finds the allegations sufficient at this time.  *Mooney*, 54 F.3d at 1214. Accordingly, defendants' objection is **overruled**.

Defendants also object to plaintiffs' references, also contained in exhs. 1, 2, and 3, to "we all" and "we received", as well as to "work[ing] alongside other employees of Forbes", and "talking to fellow employees."  While it is not clear how plaintiffs obtained their knowledge, a declarant's personal knowledge may be inferred from the contents of the declaration as a whole*.  **Mitchel v. Crosby Corp.**, CIV.A. DKC 10-2349, 2012 WL 4005535, at *5 (D. Md. Sept. 10, 2012)(*citing **Sjoblom v. Charter Commc'ns, LLC**, 571 F.Supp.2d 961, 968-69 (W.D. Wisc. 2008)("refusing to discard plaintiffs' evidence for lack of personal knowledge and inconsistencies between declarations and deposition testimony where declarants did not actually know whether coworkers were actually paid for overtime work because this fact could be inferred from declarants' observations and personal experience of not being paid for overtime") *and **Payne**

*v. Pauley*, 337 F.3d 767, 772 (7th Cir. 1991)("concluding that personal knowledge includes reasonable inferences grounded in observation or first-hand experience")). Here, plaintiffs base their statements on their own experiences, as well as from reasonable inferences from this experience and their observations, including "working alongside other employees" performing similar manual labor. Keppard also states, for example, that "[b]ased on my experience working at Forbes, I know we all performed manual labor and work towards the common goal of obtaining a producing oil well." (Docket no. 30, exh. 1). Consequently, plaintiffs' references to "we all", "we received", and "worked alongside other employees of Forbes", appear to be based, for the most part, on plaintiffs' own knowledge and experiences, as well as reasonable inferences from those experiences. Further, the fact that plaintiffs rely, in part, on knowledge obtained from other employees is not critical at this stage. *See Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 514 (W.D. Tex. Aug. 27, 2015)(Pitman, J.)(finding evidence that plaintiff became "familiar with company-wide practices due to the fact that 'he worked closely with other flow testers and visited with them about their jobs, pay, and hours'" sufficient to meet plaintiffs' slight burden at the notice stage).

Defendants also contend these statements fail to sufficiently identify the group's reference and lack a predicate regarding which entities are included.   For reasons stated in response to defendants' objections to plaintiffs' failure to identify a specific Forbes Energy entity, defendants' objection here also lacks merit.   Accordingly, defendants' objections are **overruled**.

Defendants next object to references, contained in exhs. 1, 2, and 3, to "similar pay practices" or to any reference based on plaintiffs' conversations with other employees or what plaintiffs' state they were told.   Keppard states that "[b]ased on my knowledge and talking to fellow employees, we were all subjected to the same or similar pay practices determined by defendants.   We received an hourly wage, a 'per diem,' and a day bonus."   (Docket no. 30, exh. 1).   For reasons stated above, defendants' objections are **overruled**.   ***See Dyson,*** 308 F.R.D. at 514.   Here, plaintiffs demonstrate that they have knowledge regarding similar pay practices based on their own experiences, as well as reasonable inferences obtained from their experiences and observations.   The fact that they may also have obtained information from other employees is not critical at this stage. ***Id.***   Further, Keppard appears to have been involved in the DOL investigation and presumably has personal knowledge regarding defendants' pay practices.   (Docket no. 42).

12

Finally, defendants object to plaintiffs' references, contained in exhs. 1, 2, and 3, to "it is my understanding" and "at some point." Defendants maintain these statements are vague, lack foundation and fail to provide a time frame. Keppard states that "[it] is my understanding that Forbes energy provides 'man camps,' and even provided apartments at some point, to employees." (Docket no. 30, exh. 1). Trevino states that "Forbes energy provides 'man camps,' and even provided apartments at some point, to employees. I was told about the man camps as an added benefit on top of the hourly rate when I first got the job." (Id., docket no. 2). Finally, Avila states that "Forbes Energy provides me with a bed at a 'man camp.' I was told about this when I was told about the hourly wage as an added benefit." (Id., exh. 3).

The court agrees that plaintiffs' statements regarding the apartments are speculative at best. However, plaintiffs remaining statements regarding the "man camps" appear to be based on personal knowledge or reasonable inferences derived from plaintiffs' experiences and observations. Accordingly, defendants' objections with respect to statements made regarding Forbes Energy providing apartments "at some point" are **sustained**; defendants' objections are **overruled** in all other respects.

## II.  **Plaintiffs' Motion for Conditional Certification**

Plaintiffs initially moved for conditional certification of "[a]ll current and former hourly paid manual laborers employed by Defendants between July 29, 2012 and the date notice is issued," maintaining that the putative class members are "similarly situated" in terms of job titles, duties, and compensation.  Additionally, plaintiffs assert that defendants paid putative class members an hourly rate and a "daily bonus" and provided lodging; however, they failed to include these bonuses and the fair market value of the lodging in the regular rate of pay for purposes of overtime.

Defendants object to the conditional certification, maintaining that plaintiffs fail to meet their burden with respect to the following: 1) plaintiffs fail to show joint enterprise; 2) plaintiffs to show they are similarly situated to the proposed class in terms of pay, job classification and with regard to those who have previously settled their claims; and 3) plaintiffs fail to show other class members in other divisions and/or locations want to opt in.

### A. Joint Enterprise

Initially, defendants maintain that Forbes Energy Services, Ltd. is a holding company and has no employees, Forbes Energy Services, L.L.C. employs only management and administrative staff, and that C.C. Forbes alone employed plaintiffs in its

14

Coiled Tubing Division.  Defendants argue that plaintiffs cannot show a joint enterprise because C.C. Forbes has "distinct business units with each providing different services." Moreover, defendants maintain that the Coiled Tubing Division where plaintiffs were employed by C.C. Forbes, and the Rig Division have separate locations, equipment, management, employees, pay, hours and schedules, and job positions.

Generally, to claim enterprise coverage, a plaintiff must demonstrate that the separate entities comprise an enterprise by showing that the entities: (1) perform related activities; (2) operate in a unified manner or through common control; and (3) possess a common business purpose. **Howard v. John Moore, L.P.**, No. H-13-1672, 2014 WL 5090626, at *2 (S.D. Tex. Oct. 9, 2014)(*citing* **29 U.S.C. § 203(r)(1)** *and* **Donovan v. Grim Hotel Co.**, 747 F.2d 966, 969 (5th Cir.1984)).  Further, an enterprise must have "employees engaged in commerce or in the production of goods for commerce" and "an annual gross volume of sales made or business done [of] not less than $500,000." **29 U.S.C. § 203(s)(1)(A)**.  "A determination of whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case." **29 C.F.R. § 791.2**.

However, because generally there are very few facts to consider at the notice stage, "[c]ourts have held that it is

15

appropriate to issue notice to potential class members when there is some evidence that employers are related, delaying the determination whether the employers actually have a joint-employment relationship." *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 806 (S.D. Tex. 2010(*quoting* *Manning v. Goldbert Falcon*, **LLC**, Civ. A. No. 08-3427(JEI), 2010 WL 3906735 (D.N.J. Sept. 29, 2010)(citing cases)). Consequently, "where a motion for conditional certification involves a potential class of employees that worked for separate, but related, employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination." *Id.*

Here plaintiffs submit sufficient evidence regarding the relationship between the defendants. In particular, plaintiffs submit evidence that Forbes Energy Services Ltd. "is an independent oilfield services contractor that provides a wide range of well site services to oil and natural gas drilling and producing companies to help develop and enhance the production of oil and natural gas." (Docket no. 30, exh. 4). The website lists both C.C. Forbes and Texas Energy and references 28 locations, including Texas, Mississippi, and Pennsylvania. (Id.). Additionally, the website states that Forbes Energy Services does "well servicing and fluid logistics through [its] three divisions— C.C. Forbes, L.L.C., Tx Energy Services, L.L.C.

16

and Superior Tubing Testers, L.L.C. (Docket no. 30, exh. 7). Exhibit 8 provides that Forbes Energy Services is the holding company for Forbes Energy Services L.L.C. (Id., exh. 8). Additionally, this exhibit provides that Forbes Energy Services L.L.C. "operates primarily through the following four subsidiaries, . . . directly owned by Forbes Energy Services L.L.C.: Tx. Energy Services, L.L.C.; C.C. Forbes, L.L.C.; Forbes Energy International, L.L.C.; and Superior Tubing Testers, L.L.C.. (Id.). Exhibit 9 is the Quarterly Report for Forbes Energy Services, Ltd., and provides the following address and telephone: 3000 South Business Highway 281, Alice, Tx. 78332; 361-664-0549. (Id., exh. 9). Exhibits 10 and 11 are the Texas Franchise Tax Public Information Reports for Forbes Energy Services, L.L.C. and C. C. Forbes, L.L.C., respectively, and provide the same mailing address and phone as that provided for Forbes Energy Services, L.L.C. in its Quarterly Report (exh. 9). (Id., exhs. 10 and 11). Similarly, exh. 12 reflects a business organization inquiry for Tx. Energy Services, L.L.C., which provides the same address as exhibits 9-11, and further, lists John E. Crisp as the Chief Executive Officer and Director. (Id., exh. 12). Exhibit 14, the business organizations inquiry for Superior Tubing Testers, L.L.C., provides a different address in Alice, Tx. as exhibits 9-11, but also lists John E. Crisp as the

Chief Executive Officer and Director.[2] (Docket no. 30, exh. 14). However, exhibit 16 depicts a website for Superior Tubing Testers, L.L.C., and provides the same address and phone as exhibits 9-11. (Id., exh. 16). Exhibit 17 depicts a company page for Forbes Energy Services that appears to be advertising for the following positions: dispatcher; vacuum truck CDL driver, diesel mechanic, and surveillance technician. (Id., exh. 17). Exhibits 18 and 19 are job applications under the Forbes Energy Services logo. (Id., exhs. 18 and 19). Additionally, exhibits 4, 17, 18 and 19 contain company information under the Forbes Energy Services logo and depict a vehicle with the C.C. Forbes name and logo. (Id., exhs. 4, 17, 18 and 19). Finally, notwithstanding defendants' assertions that Forbes Energy Services, Ltd. is a holding company and has no employees and that Forbes Energy Services, L.L.C. employs only management and administrative staff, exhibit 20 depicts a uniform jacket and hardhat, along with equipment, with the name and logo for Forbes Energy Services. (Id., exh. 20).

At this notice stage, the evidence presented sufficiently demonstrates that defendants are related, thereby warranting the issuance of notice to potential class members; the determination whether the employers actually have a joint-employment

---

[2] Both exhibits 12 and 14 appear to have been created in August of 2015.

relationship is more appropriately delayed for a final, stage two determination. *McKnight*, 756 F. Supp. 2d at 806.

### B. Similarly Situated

Defendants also argue that plaintiffs have failed to show that they are similarly situated to the proposed class in terms of pay, job classification and with regard to those who have previously settled their claims.[3]  Defendants maintain that C.C. Forbes has a Coiled Tubing Division where plaintiffs worked, and the Rig Division, where plaintiffs did not work.  According to defendants, both divisions have different locations, equipment, services, management, pay, hours and schedules and job positions.  Defendants also maintain that plaintiffs failed to show evidence of potential opt-in plaintiffs, and further, have failed to show a central decision, policy or plan regarding the putative class members.

In support of their motion, plaintiffs submit three declarations.  Plaintiff Keppard states that from November 26, 2013 to April 1, 2015, he was employed as a pump operator for C.C. Forbes, L.L.C. and Forbes Energy, and that he spent the majority of his time "running fuel and operating pump machinery." (Docket no. 30, exh. 1).  Additionally, Keppard states that based on his experience working at Forbes, he and others performed various manual labors designed to obtain a

---

[3] The court addresses this later argument separately.

producing oil well. (Docket no. 30, exh. 1). Keppard also
states that defendants paid an hourly wage, per diem and a day
bonus, as well as occasionally providing "man camps." (Id.).
Keppard states he worked in excess of forty hours in a single
week and was not correctly paid for his overtime. (Id.).
Additionally, plaintiffs attach a copy of Keppard's pay stub
reflecting a daily bonus that was not factored into his overtime
rate. (Id.).

Plaintiff Guillermo Trevino states that he was employed
from January 26, 2014 to the present by C.C. Forbes, L.L.C. and
Forbes Energy. (Id., exh. 2). Trevino states that he has been
driving and operating pumps that drive water and chemicals into
the well, and that he worked alongside employees performing
other types of manual later, such as coil tubing, and that they
all did manual labor aimed at getting a producing oil well.
(Id., exh. 2). Trevino further states that Forbes determined
his duties, scheduled, time off, equipment and uniforms. (Id).
Additionally, Trevino states that he and others were subjected
to the same or similar pay practices, including an hourly wage,
a per diem, and a day bonus, as well as "man camps." (Id.).
Trevino states e worked in excess of forty hours and was not
correctly paid overtime wages. (Id.).

Finally, plaintiff Trinidad Avila states that he
employed by C.C. Forbes, L.L.C. and Forbes Energy from March 24,

2015 to the present, and that he has spent the majority of his employment operating the pump, and assisting with rig-up and rig-down. (Docket no. 30, exh. 3). Avila states that his work week and schedule was determined by Forbes and that based on his experience, he and the other employees performed manual labor aimed at obtaining a producing oil well. (Id.). Like the other plaintiffs, Avila also states that he and others were subjected to the same or similar pay practices, including an hourly wage, a per diem, and a day bonus, as well as "man camps." (Id.). Avila states that he worked over forty hours a week and was not paid the correct overtime. (Id.). Plaintiffs also submit a copy of Avila's earning statement reflecting an overtime bonus.[4] (Id.). Additionally, Avila, as well as the other two plaintiffs, each state that based on their conversations with other hourly employees similarly situated, they believe these employees would opt-in. (Id., exhs. 1, 2, and 3).

Here, plaintiffs submit their sworn declarations and pay stubs indicating that they, and other employees engaged in similar job duties, were paid hourly and subjected to the same time and payroll system, worked in excess of forty hours per week, and were not properly paid overtime compensation. Although defendants contend that there are differences in terms of pay and job classification between the plaintiffs and the

---

[4] Plaintiffs also submit a copy of the direct deposit statements of Abdel P. Marti and Guillermo. (Docket no. 44).

proposed class, at this stage, plaintiffs need only show that they are similarly situated and were victims of a common decision, policy or plan to violate the FLSA. *Mooney*, 54 F.3d at 1214, n.8 (*quoting* *Sperling*, 118 F.R.D. at 407). Plaintiffs need not show that they are identically situated to the proposed class. *Basco v. Wal-Mart Stores, Inc.*, No. 00-3184, 2004 WL 1497709 (E.D. La. July 1, 2004).

Further, although defendants contend plaintiffs have provided insufficient evidence of opt-in plaintiffs and have failed to show a central decision, policy or plan regarding the putative class members. However, the fact that eight individuals have filed consent forms seeking to join the lawsuit before the opt-in period suggests there are others who would opt in if they were aware of this action. (Docket nos. 8, 9, 12, 13, 14, 15, 19 and 32). Further, plaintiffs' declarations indicate their co-worked would be interested in pursuing a claim to recover unpaid overtime. Thus, even assuming plaintiffs are required to present evidence of opt-in plaintiffs, the court believes plaintiffs' have sufficiently met their burden. *See Dyson*, 308 F.R.D. at 513 (*citing e.g.*, *Page v. Nova Healthcare Mgmt., L.L.P.*, No. H-12-2093, 2013 WL 4782749, at *5 (S.D. Tex. Sept. 6, 2013)("noting disagreement, concluding plaintiffs need not present evidence of potential opt-in plaintiffs because element is not statutory requirement, has not been discussed in

any circuit court opinion, unlike under Rule 23, there is no numerosity requirement in FLSA collective action and requiring evidence of purported class members 'is dissonant with the Supreme Court's directive that the FLSA be liberally construed to effect its purposes'"); *Black v. SettlePou, P.C.*, No. 3:10-CV-1418-K, 2011 WL 609884, at *3 (N.D. Tex. Feb. 14, 2011)("characterizing defendant's position that plaintiff is required to identify and obtain preliminary support from potential class members as 'putting the cart before the horse; there must only be a 'reasonable basis' to believe that other aggrieved individuals exist"); *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008)("prov[ing] that others are interested in opting in to the lawsuit . . . is not a statutory requirement, and several courts have rejected it")).

Nevertheless, defendants argue that if conditional certification is granted, that the putative class be limited to pump operator and helpers employed in the Coiled Tubing Division of C.C. Forbes who were paid daily bonuses and did not settle their claims. However, in their public disclosures, Forbes Energy Group is described as having "two reportable segments organized based on its products and services – Well Servicing and Fluid Logistics." (Docket no. 30, exh. 11, at 19). The Well Servicing segment is described as follows: . . .[O]ur well

servicing segment utilized our fleet of 171 owned well servicing rigs, which was comprised of 159 workover rigs and 12 swabbing rigs, as well as nine tubing testing units, six coiled tubing spreads, four electromagnetic scan trucks and related assets and equipment . . .” (Id.). Plaintiffs maintain that because plaintiffs and the putative class members are in defendants' Well Servicing segment, that the class should be defined more broadly to include all employees of the Well Servicing segment, irrespective of their location.

As previously noted, defendants have locations in Texas, Mississippi and Pennsylvania; however, plaintiffs, who worked in Texas, submit no evidence of employees that were subjected to the same time and payroll system and were all subjected to the same violations of the FLSA with respect to defendants' Mississippi and Pennsylvania locations. Accordingly, while the undersigned believes that the putative class should be open to employees of the Well Servicing segment, the class should limited to employees working in the Texas area.

### C. Department of Labor Investigation

Defendants also contend that C.C. Forbes settled overtime wage claims of many of its employees that worked in the Coil Tubing Division and that this settlement was approved by the Department of Labor. Defendants argue that these settlements will be a defense to any claim asserted by these individuals and

therefore, all plaintiffs who previously settled with defendants should be excluded from the putative class.

Plaintiffs submit a copy of a WH-58 form signed by plaintiff Keppard. (Docket no. 42). The agreement covers the work week ending in December 22, 2013 through the work week ending in February 22, 2015. (Id.). Further, the agreement provides that, in signing the agreement, the employee is waiving his right to bring suit "covering the period set forth . . . ." (Id.).

Here, plaintiffs seek notice to employees of Forbes Energy from July 29, 2012 to the date notice is issued. Plaintiffs argue that excluding the group that may have signed WH-58 from the case would affect their rights to recovery for the dates not covered in the investigation. Consequently, plaintiffs request the following two classes:

> All current and former hourly paid manual laborers employed by Defendants in the Well Servicing segment associated with drilling and production services at well sites [located in Texas] between July 29, 2012 and the date notice is issued that did not sign WH-58.

> All current and former hourly paid manual laborers employed by Defendants in the Well Servicing segment associated with drilling and production services at well sites [located in Texas] between July 29, 2012 and the date notice is issued that signed WH-58.

The undersigned believes that plaintiffs' Motion for Conditional Certification and for Notice to Putative Class

members should be **GRANTED** as amended as reflected by the language above.

## III. Objections

### A. Discovery Requests

Defendants also object to plaintiffs request that defendants provide names, addresses, emails and telephone numbers of the putative members within 10 days of court approved notice. Defendants argue that plaintiffs' request for phone numbers and emails be denied, and further, that should the court grant conditional certification, defendants be allowed 14 days to produce the requested information.

The court agrees that service by mail is sufficient at this time. *Garcia v. TWC Admin., L.L.C*, No. 14-cv-985-DAE, 2015 WL 1737932, at *4 (W.D. Tx., Apr. 16, 2015)(denying disclosure of phone numbers and email addresses, limiting information to names and addresses); *Nguyen v. Versacom, L.L.C*, No. 13-cv-4689-D, 2015 WL 1400564, at *13 (N.D. Tex, March 27, 2015)(request for email addresses and telephone numbers denied where need was outweighed by privacy interests); *Page v. Nova Healthcare Mgmt., L.L.P.*, No. H-12-2093, 2013 WL 4782749, at *7 (S.D. Tex. Sept. 6, 2013)(denying request for telephone numbers "because of the highly private and sensitive nature of this information"); *Behnken v. Luminant Mining Co., LLC*, 997 F.Supp.2d 511, 526 (N.D. Tex. 2014)(granting request for names and last known

addresses, but denying request for telephone numbers based on privacy); ***Altiep v. Food Safety Net Svs., Ltd.***, No. 14-cv-642-K, 2014 WL 4081213, at *6 (N.D. Tex. 2014)(denying request for phone number and emails). However, the undersigned sees no reason why defendants cannot produce this information within ten days. Accordingly, defendants' objections to the request for email addresses and phone numbers are **sustained** and defendants' objection to producing this information in ten days is **overruled.**

### B. Proposed Notices and Procedures

Defendants next object to the proposed procedure and the multiple notices, asserting that the Court order the parties to meet, confer and jointly prepare an accurate and balanced notice and agree upon the procedural rules. However, defendants were previously afforded an opportunity to confer prior to the filing of plaintiffs' motion. The certificate of conference contained in plaintiffs' motion provides that Mr. Solis "consulted with Michael L. Holland" and no agreement could be reached as to the motion. Further, defendants filed a brief opposing plaintiffs' motion (docket no. 35), as well as a motion to strike (docket no. 36), and had ample opportunity to propose language that was acceptable to them but, for the most part, failed to do so. Consequently, in the interests of judicial economy, the court will consider defendants' objections and rule accordingly.

1.    **Statements in the Proposed Notice**

Defendants initially object to statements in the proposed Notice found under sections entitled as follows: Introduction; Description (of the lawsuit); How to Participate in the Lawsuit; and Your Time to Join is Limited.  Defendants propose no language regarding sections entitled Introduction or Description.  With respect to the section of the proposed notice entitled, "How to Participate in the Lawsuit," defendants contend that the notice should specify that nothing should be done if the person is not owed additional wages; the individual's date of birth should not be filed with the court; and putative members should be informed that if they do not join they will not be affected by the decision, whether a recovery is allowed or denied.  The court agrees that the language suggested by defendants' is more appropriate for the Proposed Notice; accordingly, defendants' objections are **sustained.**

Defendants also contend that the proposed notice does not inform putative class members that there are potential ramifications to joining the action including: subjecting themselves to the jurisdiction of the court; subjecting themselves to counterclaims; and subjecting themselves to costs should defendants prevail.  However, in opting in, the putative class members will most likely be represented by counsel who will presumably inform any plaintiffs of their rights and

obligations in joining this suit.  Defendants' objection here is **overruled.**

Defendants further object to language contained under the section "Your Time To Join Is Limited" which states that "time is of the essence in submitting this form if you wish to make a full recovery."  Defendants propose that the statement be revised to stare "if you wish to join this action."  The undersigned agrees that the language proposed by defendants is more appropriate; accordingly, defendants' objection is **sustained.**  The sentence found under the section entitled, "Your Time To Join Is Limited" should be amended to read "time is of the essence in submitting this form if you wish to join this action."

**2.   Objection to exh. 23- Electronic Notice and Link**

Because the undersigned has recommended that plaintiffs' request for emails be denied, defendants' objection to the electronic notice and its link is **moot.**

**3. Objections to Exhs. 24 and 25- Reminder Notice and Telephone Script**

Defendants also object to the reminder notice and the telephone script.  The court agrees that the reminder notice is unnecessary.  Further, in light of the court's recommendation that defendants not be required to produce telephone numbers at this time, defendants' objection as to plaintiffs' request for

proposed   telephone   script   is   also   **moot**.   Accordingly, defendants' objection to the reminder notice is **sustained** and defendants' objection to the telephone script is **moot** based on the court's denial of plaintiffs' request for telephone numbers.

<u>CONCLUSION</u>

For the foregoing reasons,

1) defendants' Unopposed Motion for Leave to File a Response in Excess of Page Limit is **GRANTED** (docket no. 34);

2) plaintiffs' Motion to Replace Docket No. 30-24 is **GRANTED** (docket no. 38);

3) plaintiffs' Unopposed Motion for Leave to Exceed Page Limitation is **GRANTED** (docket no. 39); and

4) Defendants' Motion to Strike, and Objections to Plaintiffs' Request for Information, Proposed Notices and Proposed Procedures Regarding Plaintiffs' Motion for Conditional Certification (docket no. 36) is **GRANTED IN PART** as follows:

As to defendants' objections to statements contained in exhibits 1, 2 and 3 regarding Forbes Energy providing apartments "at some point" (found in section I (B))[5];

As to defendants' objections to producing phone and email addresses for the putative class members (found in section III(A));

As to defendants' objections to language in the proposed notice under the section entitled, "How to Participate in the Lawsuit,"; the notice should be modified to specify that nothing should be done if the person is not owed additional wages; to omit the requirement that the individual's date of birth be provided; and to inform putative members that if they do not join they will not be affected by the decision,

---

[5] These statements were not considered by the court in finding that the plaintiffs and the putative class were similarly situated.

whether a recovery is allowed or denied (found in section III(B)(1));

As to defendants' objections to language in the proposed notice under the section entitled, "Your Time to Join"; the sentence should be amended to read "time is of the essence in submitting this form if you wish to join this action" (found in section III(B)(1)); and

As to defendants' objection to a reminder notice (found in section III(B)(3));

5) Defendants' Motion to Strike, and Objections to Plaintiffs' Request for Information, Proposed Notices and Proposed Procedures Regarding Plaintiffs' Motion for Conditional Certification (docket no. 36) is **DENIED as moot** as follows:

as to defendants' objection to the electronic notice and its link based on the court's denial of plaintiffs' request for emails (found in section III(B)(2));

as to defendants' objection to the telephone script based on the court's denial of plaintiffs' request for telephone numbers (found in section III(B)(3)); and

6) defendants' Motion to Strike, and Objections to Plaintiffs' Request for Information, Proposed Notices and Proposed Procedures Regarding Plaintiffs' Motion for Conditional Certification (docket no. 36) is **DENIED** in all other respects.

Additionally, it is the recommendation of this court that plaintiffs' Opposed Motion for Conditional Certification and for Notice to Putative Class Members be **GRANTED as modified** (docket no. 30).

<u>**RECOMMENDATION**</u>

It is the recommendation of the Magistrate Judge that plaintiffs' Opposed Motion for Conditional Certification and for

Notice to Putative Class Members be **GRANTED as modified** (docket
no. 30).  In particular, plaintiffs' motion should be **GRANTED**
and the putative class be limited to:

> All current and former hourly paid manual laborers
> employed by Defendants in the Well Servicing segment
> associated with drilling and production services at well
> sites located in Texas between July 29, 2012 and the date
> notice is issued that did not sign WH-58.

> All current and former hourly paid manual laborers
> employed by Defendants in the Well Servicing segment
> associated with drilling and production services at well
> sites located in Texas between July 29, 2012 and the date
> notice is issued that signed WH-58.

Should the District Court accept this recommendation,
plaintiffs' should be ordered to amend their Notice in
accordance with the Memorandum and Recommendation.
Additionally, the following Order should be issued:

**ORDER**

Before the Court is "Plaintiffs' Motion for Conditional
Certification and for Notice to Putative Class Members."  After
considering the Plaintiffs' Motion, the Defendants' Response,
all other pleadings on file, the Court is of the opinion that
the Plaintiffs' Motion for Conditional Certification and for
Notice to Putative Class Members should be **GRANTED as modified.**

It is therefore **ORDERED** that within ten (10) days of the
entry of this Order, Defendants Forbes Energy, LTD, Forbes
Energy, LLC, and C.C. Forbes, L.L.C. ("Defendants") shall
disclose to Plaintiffs the names, and last known addresses of

"[a]ll current and former hourly paid manual laborers employed by Defendants in the Well Servicing segment associated with drilling and production services at well sites located in Texas within the last three years from the date of this Order."  This information should be provided to plaintiffs in usable electronic form, if available.

The Court hereby approves, **as modified**, the Notice to Potential Plaintiffs and Notice of Consent attached to plaintiffs' motion as Exhibit A.  Plaintiffs are **ORDERED** to mail a copy of the approved Notice to Potential Plaintiffs and Notice of Consent to all persons identified by Defendants in response to this Order within twenty (20) days of the entry of this Order.

Defendant is **ORDERED** to post a copy of the Notice to Potential Plaintiffs and Notice of Consent on its company bulletin boards at its office trailers and jobsites for thirty (30) days following the date of this Order.

The potential plaintiffs shall be provided sixty (60) days from the signing of this Order to file their Notices of Consent "opting in" to this litigation as Plaintiffs.

Lastly, Defendants are hereby prohibited from communicating, directly or indirectly, with any current or former drillers or operators about any matters which touch or concern the settlement of any outstanding wage claims, or other

33

matters related to this suit, during the opt-in period. Defendants shall so instruct all of their managers. This order shall not restrict Defendants from discussing with any current employee matters that arise in the normal course of business.

### Instructions for Service and
### Notice of Right to Object

The District Clerk shall serve a copy of this Order and Memorandum and Recommendation on all parties either electronically or by mailing a copy by certified mail, return receipt requested. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), Fed.R.Civ.P., any party who desires to object to this Memorandum and Recommendation must serve and file specific written objections within 14 days after being served with a copy. Such party shall file the objections with the District Clerk and serve the objections on all other parties and the Magistrate Judge. A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days after being served with a copy shall bar that party from de novo review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of factual findings and legal conclusions to which the party did not object, which were accepted and adopted by the District Court.

***Thomas v. Arn***, 474 U.S. 140, 150 (1985); ***Douglass v. United Servs. Auto. Ass'n***, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED** December 8, 2015.

JOHN W. PRIMOMO
UNITED STATES MAGISTRATE JUDGE